**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-01125-REB-MJW

LELAND SMALL, individually and on behalf of a class of other similarly situated persons,

    Plaintiff,

v.

BOKF, N.A.,

    Defendant.

## ORDER RE: SUMMARY JUDGMENT MOTIONS

**Blackburn, J.**

The matters before me are (1) **BOKF's Renewed Combined Motion for Summary Judgment and Brief in Support** [#96],[1] filed May 23, 2014; and (2) **Plaintiff's Combined Motion for Summary Judgment and Brief in Support on Counts I (TILA) and II (EFTA)** [#100], filed May 28, 2014. I grant both motions in part and deny them in part.[2]

---

[1] "[#96]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the briefs. *Cf.* FED. R. CIV. P. 56(c) & (d). *Geear v. Boulder Community Hospital,* 844 F.2d 764, 766 (10th Cir.) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties), *cert. denied*, 109 S.Ct. 312 (1988).

## I. JURISDICTION

I putatively have jurisdiction over this matter under 28 U.S.C. §1332(d)(2) (Class Action Fairness Act).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(a); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense. **See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).[3] In either case, once

---

[3] The mere fact that each party has filed a motion for summary judgment does not necessarily indicate that summary judgment is proper. **See Atlantic Richfield Co. v. Farm Credit Bank of Wichita**, 226 F.3d 1138, 1148 (10th Cir. 2000). **See also Buell Cabinet Co. v. Sudduth**, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

### III. ANALYSIS

This lawsuit involves a product formerly offered by defendant called FastLoan.[4] Defendant described FastLoan as "an open-end line of credit loan," which was "designed to help our customers meet their short-term borrowing needs." In the Terms and Conditions setting forth the parameters of the program, defendant made the following disclosures:

> **Interest Rate and Finance Charges**
>
> The finance charge is $1 for every $10 borrowed. This equates to an Annual Percentage Rate (APR) of 120%. The actual Annual Percentage Rate (APR) may increase if repayment is made sooner than 30 days. The finance charge will remain constant and will not increase based on the number of days any single advance is outstanding.
>
> **Cash Advance**
>
> A 10% finance charge will be assessed for each dollar that you advance through your FastLoan account feature. This finance charge will be assessed regardless of the length of time in which the advance remains outstanding. For example, if you were to Advance $100, you would be charged $10 as a finance charge whether that Advance is

---

[4] The Office of the Comptroller of the Currency has required defendant to cease offering the FastLoan product after May 31, 2014.

>repaid in 1 day or in 35 days.
>
>This finance charge will be reflected as an Annual Percentage Rate ("APR") in the FastLoan section of your Associated Checking Account statement. The APR is a measure of the cost of credit, expressed as a yearly rate. The Annual Percentage Rate is calculated by dividing the finance charge by the Advance amount and multiplying the quotient by the number of statement cycles within a year. For example, a $100 Advance with a $10 fee = $10/$100 = 10% X 12 cycles = 120% APR

Monthly account statements included similar disclosures. Repayments were deducted automatically from the borrower's checking account at the time of the next direct deposit of $100 or more. However, the borrower also could repay the advance manually. In all events, each advance was required to be repaid within no more than 35 days.

Plaintiff obtained sixteen FastLoan advances between November 2011 and December 2012 for amounts between $260 and $500 each. Each of these advances was repaid within two to thirteen days, at the time of the next qualified direct deposit into plaintiff's associated checking account. Because these loans were repaid sooner than the 30 days required by the Terms and Conditions document, the APRs associated therewith were substantially higher than 120%, ranging from 280% to 1825%.[5] Indeed, the average length of repayment of all FastLoan advances in 2011, 2012, and 2013 was approximately 14 days, and the majority (roughly 80%) of such advances were repaid prior to 30 days.

In this putative class action, plaintiff alleges that these disclosures were

---

[5] For example, plaintiff's February 27, 2012, FastLoan was repaid on February 29, 2012. A two-day loan equates to 182.5 cycles per year. At a finance charge of 10%, the APR on this loan therefore was 1825% (182.5 x 10%).

4

inadequate under the provisions of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f.  He further claims that FastLoans violated the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and that defendant is liable for breach of contract under Colorado and Oklahoma law, as well as for violation of the Colorado and Oklahoma consumer protection laws.  Defendant has moved for summary judgment as to all these claims.  Plaintiff seeks summary judgment as to the TILA and EFTA claims.  I examine each of these claims in turn.

### A.  TILA

TILA was enacted to foster the "informed use of credit" by "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  15 U.S.C. § 1601(a).  Accordingly, TILA and its implementing regulation (Regulation Z) "require[] creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."  **Beach v. Ocwen Federal Bank**, 523 U.S. 410, 412, 118 S.Ct. 1408, 1410, 140 L.Ed.2d 566 (1998).  "All TILA disclosures must be accurate, and lenders are generally strictly liable under TILA for inaccuracies, even absent a showing that the inaccuracies are misleading."  **Smith v. Cash Store Management, Inc.**, 195 F.3d 325, 328 (7th Cir. 1999) (internal citations omitted).

Plaintiff maintains that defendant violated TILA by failing to accurately disclose that the actual APR associated with FastLoan advances repaid sooner than 30 days would be much higher than 120%.  **See** 15 U.S.C. § 1632(a) (requiring that APR "be

disclosed clearly and conspicuously, in accordance with the regulations of the Bureau [of Consumer Financial Protection]."); *see also James v. Ford Motor Credit Co.*, 638 F.2d 147, 148 (10th Cir. 1980), *cert. denied*, 101 S.Ct. 3134 (1981). Defendant counters that its APR disclosure satisfied the requirements of 15 U.S.C. § 1637(a)(4), which requires the creditor to disclose the periodic rate or rates used to compute the finance charge "and the corresponding nominal annual percentage rate determined by multiplying the periodic rate by the number of periods in a year."

By relying on this section of TILA, defendant assumes that FastLoan is properly characterized as an open-ended credit plan. Plaintiff counters that the program is instead close-ended, making section 1637(a)(4) inapplicable. The parties argue extensively about whether FastLoan is an open-ended or close-ended credit plan. *Compare* 12 C.F.R. § 226.5 (disclosures required in open-ended credit transactions) *with* 12 C.F.R. §§ 226.17-226.18 (disclosures required in close-ended credit transactions). However, I find and conclude that in this instance, the characterization of the plan is ultimately irrelevant. Regardless whether a credit plan is open-ended or close-ended, TILA provides with respect to both set of transactions that "[i]f any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate." 12 C.F.R. §§ 1026.5(c) (applicable to open-ended credit transactions) & 1026.17(c)(2)(i) (applicable to close-ended credit transactions).

These provisions apply plainly to defendant's disclosure of the APR applicable to

any particular FastLoan advance. At the time the advance was made, defendant could not know the exact APR because the date of repayment varied with the arrival of each individual borrower's next direct deposit. Nevertheless, the evidence demonstrates that defendant knew that the vast majority of FastLoan advances would be repaid within 10 to 14 days, typically from the borrower's next paycheck. *See* **Official Commentary**, 12 C.F.R. § 1026.17(c)(5)-2 (where term of the transaction is determined solely by some future event, "disclosures should be based on the creditor's estimate of the time at which the specified event will occur, and may indicate the basis for the creditor's estimate.") (available at http://www.consumerfinance.gov/eregulations/ 1026-17/2013-30108_20140118#1026-17) (last accessed August 6, 2014). In light of that knowledge, defendant's reliance on a thirty-day term to express the APR was misleading and constituted a failure to provide the best information available to help consumers compare the costs associated with the FastLoan program to other available products.

Moreover, the reiteration of this same 120% figure on each monthly bank statement plaintiff received plainly was inaccurate. Creditors are required to disclose on such statements "each periodic rate that may be used to compute the interest charge expressed as an annual percentage rate and using the term Annual Percentage Rate[.]" 12 C.F.R. § 1026.7(b)(4)(i). The APR is "computed by multiplying each periodic rate by the number of periods in a year." *Id.* § 1026.14(b). At the time the statements were issued, defendant knew the actual length of time between origination and repayment of each particular FastLoan advance. It therefore was inaccurate and misleading for

defendant to rely on its thirty-day repayment assumption when it had all the information necessary to make an accurate disclosure.

I cannot conclude that the disclosure is saved by defendant's advisement that the APR "may" increase if the loan is earlier repaid. TILA and Regulation Z are to be liberally construed in favor of the consumer. ***Jackson v. Grant***, 890 F.2d 118, 120 (9th Cir. 1989). Disclosures must be reasonably understandable "in light of the inherent difficulty or complexity of the information disclosed." ***Rossman v. Fleet Bank (R.I.) National Association***, 280 F.3d 384, 394 n.9 (3rd Cir. 2002) (citation and internal quotation marks omitted). Although defendant insists that the actual APR was readily discoverable from the formula it disclosed, I cannot find that the average consumer would readily understand how to make the mathematical calculations necessary to derive an accurate representation of the APR for an advance repaid sooner than 30 days.

For these reasons, I find that plaintiff is entitled to summary judgment on its TILA claims. Defendant's motion for summary judgment as to these claims therefore will be denied, and plaintiffs' motion granted.

### B.  EFTA

The EFTA provides, in relevant part, that "[n]o person may . . . condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers." 15 U.S.C. § 1693(k)(1). Under the EFTA, a "preauthorized electronic fund transfer" is "an electronic fund transfer authorized in advance to recur at substantially regular intervals." ***Id.*** § 1693a(10). ***See also*** 12

C.F.R. Pt. 205, Supp. I, § 205.2(k). Defendant claims that these two conditions –
authorization in advance and recurrence at substantially regular intervals – are not met
here. Assuming *arguendo* that the condition of preauthorization is met,[6] I nevertheless
find and conclude that the repayments were not designed to recur at "substantially
regular intervals."

Plaintiff argues that this condition is satisfied because the majority of direct
deposits came from borrowers' bi-weekly paychecks or monthly benefits payments.
However, those withdrawals were per force limited in number and duration because
each FastLoan advance was required to be paid off, at the latest, 35 days after initiation
of the loan.  Thus, even if defendant had deducted from a particular borrower's direct
deposits weekly or biweekly, those transactions necessarily were cabined by the 35-day

---

[6] Defendant claims the condition of preauthorization is not met because the extension of credit to an applicant for a FastLoan advance was not conditioned on preauthorization to withdraw funds from incoming direct deposits, but rather required only that the applicant have a history of qualified direct deposits. Defendant points out that an applicant was not obligated to make a direct deposit and could repay the loan by means other than direct deposit if he so chose. However, it is not necessary under the EFTA that the authorization to deduct funds via electronic transfer must be a *precondition* of the extension of credit, as defendant assumes. The statute requires only that such electronic transfers be *preauthorized*. The question, therefore, appears to focus on what the applicant agreed to allow, not what the lender required for eligibility in the first instance.

Under the FastLoan Terms and Conditions, an applicant must

> promise to pay [defendant] all amounts borrowed under the Line of
> Credit, plus any finance charges, late charges, collection costs, or other
> amounts due.  You must repay each Advance and related Finance
> charge within 35 days. *Any Advance and related Finance charges will
> automatically be deducted by the Bank from your Associated Checking
> Account at the time of your next Qualified Deposit . . . regardless of
> payment sources.*

(**Plf. Motion App.**, Exh. C at 2 ["**Repayment**"] (emphasis added).)  This language clearly shows that applicants authorized defendant in advance to deduct repayments from their direct deposits.  Thus, the fact that FastLoan advances could be repaid manually is irrelevant.  Indeed, nearly 95% of FastLoan advances were repaid via direct deposit.  (*See* **Plf. Resp. App.**, Exh A-1 at 208 [#116], filed June 13, 2014.)

limit.  Once that period elapsed, defendant's authorization to deduct was no longer valid.[7]

The handful of deductions that might have occurred within that window of time do not meet the statutory definition of transfers that occur at substantially regular intervals. "The provisions related to preauthorized electronic fund transfers were aimed to protect 'consumers who arrange for regular payments (such as insurance premiums or utility bills) to be deducted automatically from their bank accounts.'" ***Okocha v. HSBC Bank USA, N.A.***, 2010 WL 5122614 at *2 (S.D.N.Y. Dec. 14, 2010) (quoting S. Rep. 95-915, at 15 (1978)).  Even if a borrower's account could have been debited multiple times – a proposition for which there is no factual support in the record before me[8] – there is no evidence that such deductions were to occur of necessity on any regularly scheduled basis.  ***See Puglisi v. Debt Recovery Solutions, LLC***, 822 F.Supp.2d 218, 232 (E.D. N.Y. 2011) (authorization for two withdrawals to pay debt did not satisfy this condition to liability under the EFTA); ***Okocha***, 2010 WL 5122614 at *2 (rejecting EFTA claim were evidence showed only that plaintiff had authorized multiple transfers, but not that such transfers were to occur "at weekly, monthly, or annual intervals").

For these reasons, I find that defendant is entitled to summary judgment as to plaintiff's EFTA claim.  Its motion as to that claim therefore will be granted, plaintiff's corresponding motion denied, and the EFTA claim dismissed with prejudice.

---

[7] Indeed, plaintiff has argued elsewhere that each extension of credit under the FastLoan program constituted a new and independent transaction.

[8] Indeed, there does not appear to be any evidence that plaintiff's account was ever debited more than once to repay any of the multiple advances he received under the program.

## C. STATE LAW CLAIMS

Defendant moves for summary judgment as to plaintiff's state law claims for breach of contract under Oklahoma and Colorado law, and under the Oklahoma and Colorado state consumer protection acts. I find and conclude that defendant is entitled to summary judgment on all these claims.

Counts III and IV of the complaint purport to state claims for breach of contract on behalf of putative national[9] and Oklahoma subclasses. Under either state's law, plaintiff must establish, *inter alia*, the breach of an enforceable promise. *See **Digital Design Group, Inc. v. Information Builders, Inc.***, 24 P.3d 834, 843 (Okla. 2001); ***Western Distributing Co. v. Diodosio***, 841 P.2d 1053, 1058 (Colo.1992). Plaintiff bases his claim on the contention that the FastLoan Terms and Conditions embodies a promise to charge borrowers an APR of 120%.[10] It does not. The FastLoan Terms and Conditions plainly state that "[t]he actual Annual Percentage Rate (APR) may increase if repayment is made sooner than 30 days." (**Plf. Motion App.**, Exh. C at 2.) This language is unambiguous and cannot be read to constitute a promise to charge an APR of no more than 120%.

Plaintiff also claims that defendant breached the provision in the Terms and Conditions that borrower's periodic statements will "include the following FastLoan details: . . . APR . . ." (*Id.* at 3.) This language is too thin a reed on which to conclude

---

[9] Count III purports to state a breach of contract claim on behalf of a putative national class without reference to any particular state law. Nevertheless, plaintiff appears to agree with defendant's assessment that this claim implicates Colorado law.

[10] Although plaintiff points out that for second and all subsequent FastLoans, borrowers were not provided with a copy of the Terms and Conditions, there can be no doubt that those alleged contracts were equally governed by the terms of the FastLoan Terms and Conditions.

that defendant expressly agreed to provide the precise APR associated with each FastLoan advance. When "an alleged promise is claimed to be part of an express contract . . . it must . . . be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." ***Soderlun v. Public Service Co. of Colorado***, 944 P.2d 616, 620 (Colo. App. 1997). ***See also Hayes v. Eateries, Inc.***, 905 P.2d 778, 784-85 (Okla. 1995). The representation that the periodic statement will contain the APR says nothing about how that APR will be expressed. This aspect of plaintiff's claim therefore fails as well.

     My determinations in this regard are not inconsistent with my conclusion that the same language fails to satisfy the requirements of TILA. While the two claims are not mutually exclusive, ***see McLean-Laprade v. HSBC***, 2013 WL 3930565 at \*2 (N.D.N.Y. July 30, 2013), the focus of the relevant inquiries is quite different. Under TILA, the court must focus on whether defendant's disclosure is adequate given the purposes and requirements of that statute, being mindful that "TILA is a remedial act ... and, as such, its provisions are to be construed liberally in favor of consumers." ***Belmont v. Associates National Bank (Delaware)***, 119 F.Supp.2d 149, 159 (E.D.N.Y.2000) (internal citation omitted). By contrast, a breach of contract claim focuses more narrowly and specifically on the language of the alleged contract to discern the precise nature of the parties' agreement. Thus, although the disclaimer that the APR "may be higher" without further edification is not sufficient for TILA purposes, it does undermine any suggestion that defendant promised to impose an APR no more than 120% or state the actual APR on borrower's periodic statements. Accordingly, defendant is entitled to

summary judgment on these claims.

Finally, plaintiff asserts claims under the Colorado Consumer Protection Act ("CCPA"), §6-1-101 - § 6-1-115., C.R.S., and the Oklahoma Consumer Protection Act ("OCPA"), 15 Okla. Stat. §§ 751 - 764.1. Defendant posits several bases it claims warrant dismissal of these claims. I examine these to the extent they are relevant to plaintiff's claims under each statute respectively.

Looking first at Oklahoma law, the OCPA provides that "[n]othing in this act shall apply to . . . Actions or transactions regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of . . . the United States." 15 Okla. Stat. § 754(2). There is no dispute but that defendant, a national association formed under and subject to the National Bank Act, is extensively regulated by the United States Comptroller of the Currency ("OCC") and, more recently, the Consumer Financial Protection Bureau ("CFPB"). Moreover, both the OCC and CFPB specifically regulate allegedly unfair, deceptive, and/or abusive acts or practices in consumer transactions. *See* 12 U.S.C. § 5531 (CFPB); 12 C.F.R. § 227.1(c)(1) (OCC).

The fact that the OCC may not regulate the FastLoan program specifically does not remove this claim from the ambit of the exemption, which broadly encompasses both "actions" and "transactions" which are regulated by federal law. *See Arnett v. Mylan, Inc.*, 2010 WL 2035132 at *3 (S.D. W.Va. May 20, 2010) (interpreting the OCPA). Thus, the fact that defendant is subject to federal regulation governing false and deceptive practices is enough to bring plaintiff's OCPA claim within the ambit of the regulatory exemption. This claim therefore must be dismissed.

Defendant also is entitled to summary judgment as to plaintiff's CCPA claim, although for different reasons.[11]  The FastLoan Terms and Conditions document specifically states that "[t]he law that will apply to this Agreement as to issues related to interest and related charges will be the law of the State of Oklahoma." (**Plf. Motion App.**, Exh. C at 4 ["**Applicable Law**"].) Despite plaintiff's protestations to the contrary, there can be little question but that his claims relate to the interest rate charged on FastLoan advances.  This language, while not overly broad, certainly is broad enough to encompass plaintiff's claims in this lawsuit.[12]  Plaintiff offers no evidence or argument suggesting that enforcement of this provision is unfair or unreasonable, *see Adams Reload Co. v. International Profit Associates, Inc.*, 143 P.3d 1056, 1060 (Colo. App. 2005), or that a valid forum selection clause cannot otherwise be invoked to preclude a

---

[11]  Although the Colorado act also contains an exemption clause, its wording and interpretation require a different outcome.  The CCPA provides that "[t]his article does not apply to:  (a) Conduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency."  § 6-1-106(1)(a), C.R.S.  As interpreted by the Colorado Supreme Court, "[t]he plain meaning of the exclusion section of the CCPA is that conduct *in compliance* with other laws will not give rise to a cause of action under section 6–1–106(1)(a):"

> The purpose of the exemption is to insure that a business is not
> subjected to a lawsuit under the Act when it does something required by
> law, or does something that would otherwise be a violation of the Act, but
> which is allowed under other statutes or regulations. It is intended to
> avoid conflict between laws, not to exclude from the Act's coverage every
> activity that is regulated by another statute or agency.

*Showpiece Homes Corp. v. Assurance Co. of America*, 38 P.3d 47, 56 (Colo. 2001) (emphasis in original; citation omitted).  *Cf. Arnett*, 2010 WL 2035132 at *3 (noting that OCPA "is not . . limited to statutory regimes that provide plaintiffs with a cause of action").  Because "[c]onduct amounting to deceptive or unfair trade practices, however, would not appear to be 'in compliance' with other laws," *Showpiece Homes Corp.*, 38 P.3d at 56, my finding that defendant's disclosures violated TILA precludes defendant from relying on this exemption for purposes of plaintiff's CCPA claim.

[12]  There is absolutely no support for plaintiff's suggestion that this provision is inapplicable because he has not presented claims for usury.  Even if the term "interest" could be so narrowly construed, the additional coverage provided for "related charges" certainly would sweep plaintiff's claims in this lawsuit within its ambit.

CCPA claim. For this reason, therefore, I find and conclude that defendant also is entitled to summary judgment on plaintiff's CCPA claim.

## IV. CONCLUSION AND ORDERS

For these reasons, plaintiff's motion will be granted as to his claim under TILA and denied as to his claim under the EFTA. Defendant's motion will be denied as to plaintiff's TILA claim and granted as to all other claims asserted in this lawsuit, which claims will be dismissed with prejudice.

**THEREFORE, IT IS ORDERED** as follows:

1. That **BOKF's Renewed Combined Motion for Summary Judgment and Brief in Support** [#96], filed May 23, 2014, **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. That the motion is **GRANTED** with respect to the Counts II, III, IV, V, and VI of the **Class Action Complaint** [#1], filed April 26, 2013; and

   b. That in all other respects, the motion is **DENIED**;

2. That **Plaintiff's Combined Motion for Summary Judgment and Brief in Support on Counts I (TILA) and II (EFTA)** [#100], filed May 28, 2014, is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. That the motion is **GRANTED** with respect to Count I of the **Class Action Complaint** [#1], filed April 26, 2013; and

   b. That in all other respects, the motion is **DENIED**;

3. That accordingly Counts II, III, IV, V, VI of the **Class Action Complaint** [#1], filed April 26, 2013, are **DISMISSED WITH PREJUDICE**; and

4. That at the time judgment enters, judgment **SHALL ENTER** as follows:

    a. In favor of defendant, BOKF, N.A., against plaintiff, Leland Small, individually and on behalf of other similarly situated persons, as to plaintiff's claims alleging:

        (1) Violation of the Electronic Funds Transfer Act (Count II);

        (2) Breach of contract under Colorado law (Count III);

        (3) Breach of contract under Oklahoma law (Count IV);

        (4) Violation of the Oklahoma Consumer Protection Act (Count V); and

        (5) Violation of the Colorado Consumer Protection Act (Count VI);

    b. In favor of plaintiff, Leland Small, individually and on behalf of other similarly situated persons, against defendant, BOKF, N.A., as to plaintiff's claim alleging violation of the Truth in Lending Act (Count I).

Dated August 7, 2014, at Denver, Colorado.

                                              **BY THE COURT:**

                                              */s/ Bob Blackburn*
                                              Robert E. Blackburn
                                              United States District Judge