**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 13-cv-01125-REB-MJW

LELAND SMALL, individually and on behalf
of a class of other similarly situated persons,

                Plaintiff,

   v.

BOKF, N.A.

        Defendant.

---

**PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD AND MEMORANDUM
IN SUPPORT**

---

### I. INTRODUCTION

Plaintiff Leland Small moves this Court for approval of his attorneys' fees, expenses, and service award in this Truth in Lending Act class action settlement. Defendant BOKF does not oppose the Motion.

On October 8th, 2015, the Court granted preliminary approval to the Parties' agreement to settle all claims. [#179]. As directed by the Court, the Settlement Class received notice of the Settlement. No Class Member has objected to any aspect of the Settlement. BOKF has paid for notice to the Class of the Settlement as directed in the Settlement Agreement. A successful plaintiff who enforces TILA liability is entitled to recover a reasonable attorney fee as approved by the Court. 15 U.S.C.§ 1640 (a)(3).

The attorneys' fee request, which will in no way reduce the $1.8 million Class recovery (which itself represents 90% of maximum possible damages under TILA in this case), is reasonable and should be approved. Class Counsel vigorously prosecuted this case until five days before trial, overcoming long odds in prevailing on summary

judgment and on a new issue of TILA damages jurisprudence, and devoted substantial attorney time on a wholly contingent basis with no guarantee of any recovery. Class Counsel billed 2595.20 hours litigating and resolving the claims asserted in this action, for a combined lodestar of $1,367,220.40. *See* Declaration of Hassan Zavareei at ¶ 24-25 ("Zavareei Decl.") and Declaration of Steve Six at ¶ 8, 9, 15, 16. ("Six Decl.") in Support of Plaintiff's Unopposed Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Award and Memorandum in Support . Moreover, Class Counsel incurred litigation expenses totaling $110,469.05 – again with no guarantee that they would ever be reimbursed. *Id.* As demonstrated below, the requested fee reimbursement of $1,214,530.95 is well supported by the law in this District—and is less than Class Counsel's lodestar in this matter.

Consistent with D.C. COLO. L. Civ. R 54.3, this motion is accompanied by a declaration that includes the following for each person for whom fees are claimed:

(1) a summary of relevant qualifications and experience; and

(2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In the interest of efficiency, Plaintiff fully incorporates the description of the litigation in the concurrently filed Motion for Final Approval.

## III. THE COURT SHOULD APPROVE THE FEE REQUEST BECAUSE BOKF DOES NOT OPPOSE IT, AND BECAUSE THE FEE REQUEST IS PAID SEPARATELY BY BOKF

Class Counsel will discuss in great detail below why the $1,214,530.95 fee and $110,469.05 expense request is more than supported by the work they performed in

this case. However, there is facial evidence that this is so. That is because BOKF itself, despite having to pay 90% of the Class' maximum damages in addition to any fee award, has agreed not to contest a fee and expense award up to $1.325 million. That alone provides evidence that Defendant understands the value of the significant amount of work that went into the excellent result for the Class—and has likely agreed not contest the fee application in the amount of $1.325 million because it would run the risk of paying more than that amount in a contested fee motion.

Moreover, each notice to Class Members specifically stated that Class Counsel would seek a fee and expense award of up to $1.325 million. Not one Class Member objected on this basis (or any other basis). The absence of any Class Member objection is an additional factor that supports the requested attorneys' fees.

Finally, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: " A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following that advice and desiring to avoid second litigation over fees, the parties separately negotiated payment to Plaintiff's counsel for work in this case. Zavareei Decl., at ¶ 14. BOKF does not oppose an application up to $1,325,000.00, and BOKF has agreed to pay the attorney fees and expenses awarded by the Court up to that amount <u>separate and apart</u> from the Settlement Fund. Settlement Agreement, ¶ 68 [#178-1]. Plaintiff is also applying for a service award for Class Representative Leland "Curt" Small in an amount of $20,000.00. BOKF does not oppose an application for service award up to $25,000.00 and BOKF agrees to pay the

service award determined by the Court up to that amount separate from the Settlement Fund.

## IV. UNDER TILA, CLASS COUNSEL ARE ENTITLED TO A FEE PAID BY DEFENDANT FOR ALL WORK DONE IN THE CASE

As the Court found in its class certification Order, "Plaintiff's counsel is amply qualified to act as counsel for the class." [#135-9](appointing Tycko & Zavareei LLP and Stueve Siegel Hanson LLP as Class Counsel). TILA entitles counsel to seek compensation for its excellent work to date. Counsel's vigorous pursuit of discovery, and strong briefing on two rounds of summary judgment briefing, and class certification resulted in a liability ruling against BOKF without even the need for a trial. Indeed, counsel was required to enforce TILA liability in the face of a well thought out effort by defendant and its sophisticated banking consultant to create a FastLoan program that avoided TILA's APR disclosure requirements. FastLoan was a new deposit advance product on the market and Class Counsel developed innovative arguments as to why its APR was misstated, and why that misstatement violated TILA. Counsel is aware of no similar case. Significantly, to secure the excellent result achieved, Plaintiff was required to complete trial preparations and demonstrate his willingness to go to trial.

Section 1640(a)(3) of TILA provides that a creditor is liable for costs and reasonable attorneys' fees "in the case of any successful action to enforce the foregoing liability . . . ..". Consumers are awarded TILA attorney fees in "any successful action"; importantly, an action is successful even if other TILA and other state or federal claims are not successful or not addressed. *See, e.g.*, *Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 186 (4th Cir. 2007).

## A. Prevailing Plaintiffs Are Entitled to Attorneys' Fees Regardless of Amount Recovered

Plaintiff moves for attorneys' fees under 15 U.S.C. § 1640(a)(3), which provides that "any creditor who fails to comply with any requirement imposed under this part" is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court." A fee-shifting provision like § 1640(a)(3) subsidizes the lawsuits of meritorious plaintiffs. Such subsidies appear frequently in civil rights and consumer protection laws, presumably because Congress is (or was) particularly interested in seeing those laws prosecuted. *See, e.g.*, 42 U.S.C. § 1988(b) (2000). The members of Congress who approved the TILA may have assumed either that the victims of TILA violations could not afford to bring TILA claims or that they would choose not to after considering the low returns those claims yield relative to the high costs of litigation. Only with fee shifting does the prosecution of a typical TILA claim become an economically sensible possibility. *Nigh*, 478 F.3d at 188.

On August 7, 2014, the Court entered summary judgment for Plaintiff on the TILA claim. [#134]. The Court determined that Defendant committed two separate TILA disclosure violations and that each violation provided for an award of statutory damages up to $1 million. [#134, 139]. Thus, Plaintiff is entitled to a reasonable award of attorneys' fees. *Stutzka v. McCarville*, 243 F. App'x 195, 197 (8th Cir. 2007) ("an award of fees is mandatory once a TILA violation has been established, with the amount of the fees being committed to the district court's discretion"). The award is mandatory. *Purtle v. Eldridge Auto Sales*, 91 F.3d 797, 802 (6th Cir. 1996). "The language in section 1640(a) unequivocally entitles a successful Truth–in–Lending plaintiff to an award of attorney's fees, and leaves only the amount of the award to the court's discretion." *de*

*Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 233 (1st Cir. 1990). *See also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 262 n.34, 95 S. Ct. 1612, 1624 n.34, 44 L. Ed. 2d 141 (1975) ("[o]ther statutes which are mandatory in terms of awarding attorneys' fees include ... the Truth in Lending Act, 15 U.S.C. § 1640(a)").

Importantly, prevailing plaintiffs are entitled to attorney's fees regardless of the amount of recovery awarded, *In re Pine*, 705 F.2d 936, 938 (7th Cir. 1983), and regardless of whether the plaintiff suffered actual damages. *Purtle.*, 91 F.3d at 802. Fees are in no way limited by the amount of the consumer's damage recovery in a federal fee shifting statute. *City of Riverside v. Rivera*, 477 U.S. 561 (1986) (rejecting proportionality between plaintiff's recovery and the fee award); *Trafford Distribution Ctr. v. N.L.R.B.*, 478 F.3d 172, 178 (3d Cir. 2007) (same). For example, in the TILA action *Nigh,* , 478 F.3d 183, the court granted an $85,000 fee award, even where the consumer only received the statutory maximum of $1,000. Luckily, the Court here need not evaluate the propriety of such a disproportionate fee award. That is because here, the Class's recovery substantially exceeds the fee request.

### V. PLAINTIFF'S FEE REQUEST IS REASONABLE

Reasonableness of the amount of the fee request is the keystone under TILA and other federal fee-shifting statutes. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley,* 461 U.S. at 433, 103 S. Ct. at1939. Here, Class Counsel's lodestar more than justifies

the $1,214,530.95 fee request. Indeed, applying counsel's customary rates, their lodestar to date is approximately $1,367,220.40. Zavareei Decl., ¶ 24-25; Six Decl. ¶15,16.

### A. The Hours Expended Were Necessary

In determining the reasonableness of hours expended, the Court considers (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to specific task. *See Ramos,* 713 F.2d at 553–54. Counsel should "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. 424, 434.

Class Counsel expended a great deal of effort in bringing about this settlement on behalf of Class Members. BOKF's skilled attorneys mounted a hard defense at every stage. The hours Class Counsel expended, which total more than 2595.20 included pre-complaint factual investigation; working with clients and potential clients to gather factual background; legal investigation; drafting, preparing, and filing the Complaint; conducting discovery; interviewing and hiring an expert witness; briefing Defendant's initial summary judgment filing as well as BOKF's and Plaintiff's second round of cross motions for summary judgment; moving for class certification; briefing the need for classwide notice and the issue of whether $2 million in statutory damages was possible; mediation and settlement discussions; and trial preparation. Zavareei Decl., ¶ 41. Counsel also invested significant time in supervising the drafting and delivery of notice

of the Class regarding the Settlement. A table detailing Class Counsel's lodestar can be found in the attached Zavareei and Six Declarations.

Class Counsel efficiently and productively litigated this case. For example, of the four depositions taken by Plaintiff in the case, three were attended by just one member of Class Counsel. Zavareei Decl., ¶ 42 Plaintiff's expert's deposition was defended by a single member of Class Counsel, as was Plaintiff Small's deposition. Zavareei Decl., ¶ 43. The briefing on case dispositive motions was divided evenly to ensure no redundant drafting. Zavareei Decl., ¶ 44. And trial preparation activities were also divided between Class Counsel. Zavareei Decl.,¶ 45.

To arrive at the base lodestar figure of $1,367,220.40, Class Counsel multiplied the total hours by the current hourly rates of the attorneys and paralegals who worked on this litigation. The rates for each individual attorney and paralegal are set forth in the Zavareei and Six Declarations, and all represent the attorneys' and paralegals' customary billing rates. Zavareei Decl., ¶ 25-26 Six Decl.¶ 9-15. The hours reported were compiled from contemporaneous time records maintained by each attorney and paralegal.

Lastly, BOKF's maneuvering increased the time and resources necessary to prosecute this case. Indeed, Plaintiff had offered to settle the litigation on significantly similar to terms prior to the extensive trial preparation activities. Zavareei Decl., ¶ 34. However, BOKF ultimately did not agree to a settlement on similar terms until just before trial—after Plaintiff had spent significant time preparing. *Id.*, ¶ 34.

Class Counsel respectfully submits that the hours expended on this litigation were reasonable and necessary in this case. As discussed above, the hours expended were necessary to prevail.[1]

**B. Class Counsel's Customary Hourly Rates Are Reasonable**

This case required the expertise, legal skill, and resources of the two Class Counsel firms who undertook this case. Indeed, no law firm or attorney had ever challenged the "deposit advance" program operated as FastLoan by BOKF. Zavareei Decl., ¶35. Defendant even maintained that the Office of the Comptroller of the Currency itself approved the Fastloan product's TILA disclosure. [#45-2, §3]. The undertaking was therefore highly risky. Moreover, while case law in the TILA individual action context is fairly extensive, it is much less so with respect to TILA class actions. As such, when—over BOKF's strident objections— Plaintiff sought to hold BOKF accountable for two, $1 million dollar statutory damages awards for its two separate violations of TILA, Class Counsel was breaking new ground requiring additional briefing and an Order upholding Plaintiff's analysis. [#139]. Indeed, there simply was no case

---

[1] Moreover, TILA fee jurisprudence is clear that consumers should be awarded attorneys' fees for success in TILA claims—even when Plaintiff is unsuccessful on other, related claims. The law is clear that an attorney who has obtained excellent results should recover a fully compensatory fee for work on all the claims, TILA and non-TILA, even where not all claims were successful. *Hensley*, at 435; *Bradford v. HSBC Mortgage Corp.*, 859 F. Supp. 2d 783, 787 (E.D. Va. 2012) (awarding fees for unsuccessful rescission claims that were "related in part" to successful claims); *Diaz v. Paragon Motors of Woodside, Inc.*, CV-03-6466 CPS RML, 2007 WL 2903920 (E.D.N.Y. Oct. 1, 2007) (declining to remove time spent on unsuccessful claims where they were based on same disclosure issues relevant to successful TILA claims); *Bradford v. HSBC Mortgage Corp.*, 859 F. Supp. 2d 783, 795 (E.D. Va. 2012) ("Here, because Bradford's TILA action undoubtedly succeeded, *Nigh* supports the conclusion that the lodestar may include hours spent litigating ultimately unsuccessful claims if the TILA action itself succeeded and those unsuccessful claims are related to the successful TILA claim.").

that previously decided the issue of whether 15 USC 1640(a) allowed for two $1 million statutory damages caps in a class action. As Plaintiff argued, under TILA, class recoveries are governed by the specific class action damages provision at Section 1640(a) of TILA, as opposed to the individual damage recovery provisions of Section 1640(g). BOKF relied upon Section 1640(g), which limits a single person to a single recovery even in the case of multiple failures to disclose information. Plaintiff argued that the more specific <u>class action</u> damages provision in Section 1640(a)(2)(B) controlled. Because Plaintiff prevailed on this novel issue, and only because it did so, the Class' maximum recovery in the case doubled to $2 million.

For all these reasons, it is fair and reasonable to calculate lodestar in this case based on Class Counsel's customary billing rates. Tycko and Zavareei's customary billing rates are based on rates set by the D.C. District Court in the Laffey Index, which measures prevailing market rates, based on seniority, in the D.C. area. Zavareei Decl., ¶ 26.

Stueve Siegel's customary rates are based on the rates approved by Courts and the rates Stueve Siegel charges its hourly billing clients. Six Dec. ¶ 9-13. Our firm's rates requested in this application have been approved as part of a lodestar awards or crosschecks by federal district courts around the country including last year in the District of Colorado. *See*, *e.g.*, *Smith v. Pizza Hut, Inc.*, 09-cv-1632 (March 26, 2015)(#466)(*approving a lodestar fee award with rates similar to its current rates). Six Decl.* ¶11-12. A full citation of the support for Stueve Siegel's rates is found in the Six Declaration, ¶ 8-15.

Applying counsel's customary rates, their total lodestar to date is approximately $1,367,220.40. Zavareei Decl., ¶ 25. The $1,214,530.95 million fee requested thus represents a negative lodestar multiplier of .89. Zavareei Decl.¶29,32.

With the base lodestar in mind, the Court may in its discretion adjust the base lodestar depending on certain factors. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998).These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). In this District, "courts typically award multipliers of 2 to 3 times the lodestar." *Tennille v. W. Union Co.*, No. 09-cv-00938, 2013 WL 6920449, at *14 (D. Colo. Dec. 31, 2013) (citing *Lucas v. Kmart Corp.*, No. 99-cv-1923, 2006 WL 2729260, at *6 (D. Colo. July 27, 2006)). Even though Plaintiff is not seeking a multiplier, Plaintiff respectfully submits here that a multiplier would have been appropriate in this case.

## VI. CLASS COUNSEL'S EXPENSES SHOULD BE REIMBURSED

Expenses are compensable if the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See, e.g., Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if such charges would normally be billed to client). As described in detail in the Zavareeei and Six Declarations, the incurred expenses of $110,469.05, were customary, reasonable, and necessary to achieve the significant result reached in this litigation. Zavareei Decl., ¶ 52, Six Decl.¶16. These expenses include the costs of depositions around the country, mediation, travel to hearings, the

employment of an expert to opine on ascertainability of the Class and damages issues, and significantly, trial preparation. Zavareei Decl., ¶ 53.

## VII. The Requested Service Award to the Named Plaintiff

Courts have found that incentive awards to class representatives are justified if necessary to induce individuals to become named representatives, or to compensate them for personal risk incurred or additional effort provided for the benefit of the class. *See*, *e.g.*, *UFCW Local 880–Retail Food Emp'rs Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x. 232, 234 (10th Cir. 2009); *see also Ponca Tribe of Indians of Oklahoma v. Continental Carbon Co.*, No. 05-cv-455, 2009 WL 2836508, at *2 (W.D. Okla. July 30, 2009) ("The practice of granting incentive awards to Class Representatives is common and widespread in class litigation."). In recognition of his effort on behalf of the Class, Plaintiff requests that this Court award a Service Award of $20,000. For almost three years, Plaintiff devoted substantial time and energy to this litigation. He answered extensive written discovery, produced private and confidential financial records, and was deposed by BOKF—subjecting himself to invasive questioning. Participating in the case has required Mr. Small to miss work. Zavareei Decl., ¶ 54. Significantly, Mr. Small has shown a dedicated commitment to reforming the FastLoan program to include clear and accurate APR disclosures. This is most directly demonstrated by the fact that BOKF made an Offer of Judgment to Mr. Small on July 2, 2013 in excess of $10,000, an offer that he declined in favor of continuing to work for fair and meaningful TILA disclosure for FastLoan. *Id.*, ¶ 54. Mr. Small participated actively with trial preparation. *Id.*, ¶ 54. In addition, Mr. Small had made arrangements to attend the entire trial despite moving from Colorado to Arizona where he currently

resides, including making arrangement to travel to Denver for trial and to be away from his job. *Id.*, ¶ 54. Throughout the litigation Mr. Small actively participated in conferences with counsel regarding the progress of the case and provided essential discovery concerning his claims. *Id.*, ¶ 54.

"Numerous courts have recognized that incentive awards are an efficient and productive way of encouraging members of a class to become class representatives, and in rewarding individual efforts taken on behalf of the class." *Droegemueller*, 2009 WL 961539, at *5 (citations omitted). *See also e.g.*, *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003 (D. Colo. 2014) (service award for class representative in the amount of $15,000 was reasonable); *Ryskamp v. Looney*, No. 10-CV-00842-WJM-KLM, 2012 WL 3397362, at *6 (D. Colo. Aug. 14, 2012( ("the Court finds it appropriate to approve an incentive award for Plaintiff, and finds Plaintiff's requested award of $50,000 to be appropriate.").

Because the significant monetary and non-monetary benefits now available to the Settlement Class would not have been obtained without the active participation and numerous hours of the named Plaintiff, it is entirely fair that Plaintiff receive a compensatory award for service on behalf of the Class members.

## VIII. CONCLUSION

Class Counsel's request for attorneys' fees, reimbursement of expenses incurred in connection with the prosecution and settlement of this litigation, and a Service Award for Plaintiff Small should be approved for the reasons stated herein.

Dated: February 8, 2016						Respectfully submitted,


						   /s/ Steve Six
						Steve Six (Admitted in D. Colorado)
						STUEVE SIEGEL HANSON LLP
						460 Nichols Road, Suite 200
						Kansas City, MO 64112
						(816) 714-7100
						(816) 714-7101 (fax)


						TYCKO & ZAVAREEI LLP
						Hassan Zavareei (Admitted in D. Colorado)
						Jeffrey D. Kaliel (Admitted in D. Colorado)
						1828 L Street, N.W., Suite 1000
						Washington, D.C. 20036

						**COUNSEL FOR PLAINTIFFS / CLASS COUNSEL**


						**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2016, I electronically filed the foregoing using the Court's CM/ECF system which will send notification of such filing to counsel of record.


						/s/ Steve N. Six
						**Steve Six**